UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| ADONIS LASHAWN MCLEMORE #301669, | ) |
| --- | --- |
| | ) |
| Petitioner, | ) |
| | ) NO. 3:19-cv-00379 |
| v. | ) |
| | ) |
| SHAWN PHILLIPS, Warden, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Adonis LaShawn McLemore filed a pro se petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1) and a supporting Memorandum. (Doc. No. 2). Respondent filed an Answer. (Doc. No. 12). For the following reasons, Petitioner is not entitled to relief under Section 2254, and this action will be dismissed.

I. **Procedural Background**

A Davidson County grand jury issued an indictment for first degree murder, felony murder, and especially aggravated robbery—Petitioner and co-defendant Pamela Jenkins faced the latter two charges, while co-defendant Joshua Carter faced all three. (Doc. No. 10-1 at 3–7). Petitioner and Carter were tried at a joint trial, with Jenkins testifying for the State. See State v. Carter, No. M2014-00767-CCA-R3-CD, 2015 WL 3929635 (Tenn. Crim. App. June 26, 2015). The jury convicted Petitioner of facilitating his two charged offenses—a lesser-included offense—and the court sentenced him to fifty years' imprisonment. (Doc. No. 10-1 at 31–32). The Tennessee Court of Criminal Appeals (TCCA) affirmed, and the Tennessee Supreme Court denied Petitioner's application for permission to appeal. Carter, 2015 WL 3929635, perm. app. denied Oct. 15, 2015.

Petitioner filed a pro se petition for post-conviction relief (Doc. No. 11-14 at 35–44), followed by an amended petition. (Id. at 83–91). The court held an evidentiary hearing (Doc. No. 11-15) and denied relief. (Doc. No. 11-14 at 95–114). The TCCA affirmed, and the Tennessee Supreme Court denied discretionary review. McLemore v. State, No. M2018-00351-CCA-R3-PC, 2019 WL 258710 (Tenn. Crim. App. Jan. 18, 2019), perm. app. denied Mar. 28, 2019.

## II. Factual Background

The TCCA provided a comprehensive account of the evidence presented at trial on direct appeal, and the Court will refer to specific evidence as necessary in the analysis below. Here, to provide context for Petitioner's claims, the Court relies on the TCCA's concise summary of the underlying facts on post-conviction appeal:

> On the evening of May 5, 2011, the two victims, Jordan Gardner and Jay Artis, were at Out of Bounds nightclub when they met Pamela Jenkins. After seeing the victims "flash[ing] their rolls of money," Jenkins called Joshua Carter to setup a robbery. Carter called the Petitioner and they met Jenkins and the two victims in a parking lot across the street from the club. Carter and the Petitioner attempted to rob Gardner when Carter shot and killed Gardner. Jenkins testified at trial that the Petitioner was "scuffling" with Artis when Carter pulled out a gun; however, Artis testified that he was in a car and saw Gardner "struggling" with a man when the man pulled out a gun and shot Gardner. Artis later identified Carter as the shooter and the Petitioner as standing behind Carter when Gardner was shot.

McLemore, 2019 WL 258710, at *1 (internal citations omitted).

## III. Claims

Petitioner's asserted grounds for relief include "ineffective assistance of counsel" and "all of [the] post-conviction issues in [his] pro se petition." (Doc. No. 1 at 5–6). As the supporting facts for these grounds, Petitioner states, "see supporting facts in the attached habeas corpus petition." (Id.). Based on this statement, the Court liberally construes the Petition to incorporate by reference any claims based on specific instances of ineffective assistance or other post-conviction issues mentioned in the Memorandum attached to the Petition. See McCormick v. Butler, 977 F.3d 521,

2

528 (6th Cir. 2020) ("'[H]owever inartfully pleaded,' 'vague' or 'conclusory,' courts construe pro se habeas petitions liberally.") (quoting Franklin v. Rose, 765 F.2d 82, 84–85 (6th Cir. 1985)). However, the Court will not scour the state court record to "identify and address the arguments that Petitioner could have made but did not," George v. Nagy, 2018 WL 8206735, at *2 (6th Cir. Nov. 15, 2018) (quoting Geboy v. Brigano, 489 F.3d 752, 767 (6th Cir. 2007)), particularly when Petitioner did not cite or attach to the Petition whatever state-court records he believes are relevant. See Kelley v. Burton, 792 F. App'x 396, 397 (6th Cir. 2020) (explaining that, even for pro se habeas petitioners, a "district court may not create a claim which [a party] has not spelled out in his pleading" because "liberal construction does not require a court to conjure allegations on a litigant's behalf") (internal citations and quotation marks omitted).

Construing the Petition in this manner, Petitioner asserts the following claims:

1. Trial counsel was ineffective by failing to:

    A. Impeach a witness (Doc. No. 2 at 5);

    B. Present an alibi witness (id.);

    C. Rebut the State's expert witness (id.); and

    D. Investigate and obtain exculpatory video footage. (Id. at 6).

2. The State failed to disclose:

    A. A promise of leniency to Petitioner's co-defendant in exchange for trial testimony (Doc. No. 1 at 9); and

    B. Information necessary to investigate and obtain exculpatory video footage. (Doc. No. 2 at 7).

**IV. Legal Standard**

Federal habeas relief for state prisoners is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Harrington v. Richter, 562 U.S. 86, 97 (2011). AEDPA

3

establishes a demanding standard for granting federal relief on claims "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). Under AEDPA, such a claim cannot be the basis for federal relief unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" Hill v. Curtin, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting Lockyer v. Andrade, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Harris v. Haeberlin, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous"—instead, the federal court must find that the state court's application was "objectively unreasonable." Id. (quoting Wiggins v. Smith, 539 U.S. 510, 520–21 (2003)).

To grant relief under Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." Young v. Hofbauer, 52 F. App'x 234, 236 (6th Cir. 2002). State court factual determinations are only unreasonable "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the

record." Pouncy v. Palmer, 846 F.3d 144, 158 (6th Cir. 2017) (quoting Matthews v. Ishee, 486 F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." Rice v. White, 660 F.3d 242, 250 (6th Cir. 2011) (citing Byrd v. Workman, 645 F.3d 1159, 1172 (10th Cir. 2011)).

Review of claims rejected on the merits in state court, however, is ordinarily only available to petitioners who "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the TCCA. Adams v. Holland, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). "To be properly exhausted, each claim must have been 'fairly presented' to the state courts," meaning that the petitioner presented "the same claim under the same theory . . . to the state courts." Wagner v. Smith, 581 F.3d 410, 414, 417 (6th Cir. 2009) (citations omitted).

The procedural default doctrine is "an important 'corollary' to the exhaustion requirement," under which "a federal court may not review federal claims that . . . the state court denied based on an adequate and independent state procedural rule." Davila v. Davis, 137 S. Ct. 2058, 2064 (2017) (citations omitted). A claim also may be "technically exhausted, yet procedurally defaulted" where "a petitioner fails to present a claim in state court, but that remedy is no longer available to him." Atkins v. Holloway, 792 F.3d 654, 657 (6th Cir. 2015) (citing Jones v. Bagley, 696 F.3d 475, 483–84 (6th Cir. 2012)).

To obtain review of a procedurally defaulted claim, a petitioner must "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" Middlebrooks v. Carpenter, 843 F.3d 1127, 1134 (6th Cir. 2016) (citing Sutton v. Carpenter, 745 F.3d 787, 790–91 (6th Cir. 2014)). Cause

may be established by "show[ing] that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Davila, 137 S. Ct. at 2065 (citations omitted). Prejudice requires a showing that the errors at trial worked to a petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Garcia-Dorantes v. Warren, 801 F.3d 584, 598 (6th Cir. 2015) (quoting Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991)) (internal quotation marks omitted). And the manifest-miscarriage-of-justice exception applies "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke v. Haley, 541 U.S. 386, 392 (2004) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

V.      **Analysis**

    A.      **Claims Adjudicated on the Merits**

Petitioner presented three claims of ineffective-assistance to the TCCA on post-conviction appeal. The TCCA applied the appropriate federal standard for these claims and rejected them on the merits. McLemore, 2019 WL 258710, at *6–7 (citing the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984)).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) deficient performance and (2) prejudice to the defendant. Knowles v. Mirzayance, 556 U.S. 111, 124 (2009) (citing Strickland, 466 U.S. at 687). Counsel's performance is deficient where it falls "below an objective standard of reasonableness." Strickland, 466 U.S. at 687–88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Prejudice requires a showing "that there is a

6

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Further, when a petitioner raises an exhausted claim of ineffective assistance in a federal habeas petition, "[t]he pivotal question" is not "whether defense counsel's performance fell below Strickland's standard," but "whether the state court's application of the Strickland standard was unreasonable." Harrington, 562 U.S. at 101. This amounts to a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. 12, 15 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)).

### 1. Claim 1.A—Impeaching a Witness

Petitioner asserts that trial counsel failed to impeach a witness. Petitioner made this argument on post-conviction appeal as it relates to co-defendant Pamela Jenkins. Specifically, Petitioner argued that trial counsel should have impeached Jenkins regarding an alleged favorable plea deal with the State and her prior inconsistent statements about the incident. McLemore, 2019 WL 258710, at *6. The TCCA found that Petitioner failed to demonstrate both deficiency and prejudice for this claim:

> At the post-conviction hearing, trial counsel testified that he spoke with the State regarding any deals made with Pamela Jenkins, that he was not made aware of any deals, and that he cross-examined Jenkins accordingly. The post-conviction court concluded that trial counsel adequately cross-examined Jenkins and that the Petitioner failed to prove that trial counsel's actions were deficient or prejudicial. This court has previously held that "cross-examination is a strategic and tactical decision of trial counsel, which is not to be measured by hindsight." State v. Kerley, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991). "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). The post-conviction court's findings are supported by the record, and the Petitioner has failed to demonstrate deficient performance or prejudice therefrom. Accordingly, he is not entitled to relief.

7

McLemore, 2019 WL 258710, at *6.

This ruling was reasonable. As context, trial counsel was the third attorney to question Jenkins at trial, and he began his cross-examination of Jenkins with the topics raised in this claim already well-covered. First, the State attempted to get ahead of these topics by addressing them on direct questioning. The State elicited testimony that Jenkins was facing the same charges as Petitioner, that she did not have any agreement with the State, and that she did not expect anything in return for testifying. (See Doc. No. 10-8 at 3 ("Q. And do you have a plea or have you made any deals at all about your case? A. No, ma'am.")). The State also elicited testimony that Jenkins' first statement to police at the station was not accurate, but her second such statement was truthful and consistent with her trial testimony. (Id. at 27–28, 31–32). Finally, the State elicited testimony that Jenkins had been convicted of two misdemeanor crimes involving dishonesty. (Id. at 32–33). Next, co-defendant Carter's counsel cross-examined Jenkins, aggressively seeking to impeach her credibility based on her prior inconsistent statements to police and her criminal history. (Id. at 35–37, 49–51, 53, 65). Co-defendant Carter's counsel also elicited Jenkins' testimony that, although she had not entered a plea bargain with the State, she was hoping to receive leniency because she was testifying. (Id. at 41–42 ("Q. B[ut] you are hoping to get some kind of leniency in return for your testimony, aren't you? A. Hopefully.")).

With this foundation laid, trial counsel commenced questioning Jenkins. He probed Jenkins' recollection of the details surrounding the incident, highlighting where her testimony differed with that of other witnesses. (See id. at 69, 76, 79). Trial counsel also asked a series of questions to Jenkins framed as though she had entered a deal with the State prior to testifying, and the State lodged successful objections. (Id. at 72–73). Indeed, at the post-conviction evidentiary hearing, trial counsel acknowledged that he had no basis to believe Jenkins had a plea deal prior

8

to trial. (Doc. No. 11-15 at 41). Petitioner's evidentiary hearing testimony, on the other hand, seemed to reflect his belief that Jenkins must have testified pursuant to a plea deal because she received a sentence of only ten years. (Id. at 19–20). But Petitioner presented no evidence to support that speculation. It was therefore reasonable for the TCCA to conclude that Petitioner failed to demonstrate both deficiency and prejudice regarding trial counsel's cross-examination of Jenkins. See Jackson v. Bradshaw, 681 F.3d 753, 765 (6th Cir. 2012) ("Most cross-examinations can be improved but if that 'were the standard of constitutional effectiveness, few would be the counsel whose performance [pass] muster.'") (quoting Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997)). Claim 1.A, accordingly, will be denied.

### 2. Claim 1.B—Presenting an Alibi Witness

The shooting at the center of this case occurred around 2:30 a.m. in a parking lot across the street from an establishment on Murfreesboro Road. Carter, 2015 WL 3929635. Petitioner asserts that trial counsel was ineffective for failing to call his wife to testify that Petitioner was not there. The TCCA rejected this claim:

> At the post-conviction hearing, the Petitioner's wife asserted for the first time that the Petitioner was with her the entire night and that she could provide an alibi for him. However, trial counsel and Detective Injaychock both refuted this testimony, explaining that in multiple interviews and conversations before trial, the Petitioner's wife consistently stated she was a heavy sleeper and could not be sure the Petitioner was in bed with her the entire night. In its ruling, the post-conviction court implicitly accredited the testimonies of trial counsel and Detective Injaychock when it concluded that the Petitioner failed to prove how trial counsel was ineffective for not calling the Petitioner's wife as an alibi witness, noting credibility issues that would have come from her potentially perjured testimony. As previously noted, the credibility of a witness is a factual issue to be determined by the trial court and this court will not re-weigh or re-evaluate the evidence. Accordingly, the Petitioner is not entitled to relief.

McLemore, 2019 WL 258710, at *6.

As this excerpt reflects, the TCCA resolved this claim by crediting the evidentiary hearing testimony of investigating detective Andrew Injaychock and trial counsel over that of Petitioner's wife. Petitioner's wife testified that Petitioner did not leave the apartment complex where she lived the entire night of the incident. (Doc. No. 11-15 at 10). Specifically, she testified that she told detectives and trial counsel she went to bed at 11:00 p.m. and remained awake while Petitioner was outside selling drugs until approximately 1:30 a.m., when she told him to come inside. (Id. at 7–8, 10–15). But Injaychock testified that Petitioner's wife gave him a different account. Injaychock testified, his memory refreshed by his report memorializing their conversation, that Petitioner's wife said she is a "heavy sleeper" and would not have known if Petitioner left the complex the night of the incident. (Id. at 51–53). Trial counsel was consistent with Injaychock on this point, testifying that Petitioner's wife specifically told him she could not say where Petitioner was from 11:00 p.m. to the time she woke up the next morning. (Id. at 34–35, 43, 45–46). Trial counsel, therefore, did not consider Petitioner's wife to be an alibi witness. (Id. at 35–36).

A federal habeas court "may not lightly ignore" a state court's "credibility findings; they are entitled to 'great deference' and 'must be sustained unless [they are] clearly erroneous,' particularly in the context of AEDPA-limited habeas review." Howell v. Hodge, 710 F.3d 381, 386 (6th Cir. 2013) (quoting Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam)). Petitioner has not demonstrated that the credibility finding discounting his proffered alibi witness was clearly erroneous. Accordingly, the TCCA reasonably rejected this claim.

### 3.  Claim 1.C—Rebutting an Expert Witness

Petitioner's next claim concerns trial counsel's handling of cell phone tower evidence. Richard Littlehale, a special agent with the Tennessee Bureau of Investigation, testified at trial "as an expert in the use of telecommunication records in criminal investigations" that cell phones

10

"generally use the closest cellular tower that has open channels" but "will use towers that are farther away if the closest tower is 'full,' is having technical problems, or is blocked by an obstruction." Carter, 2015 WL 3929635. Detective Injaychock "testified about the information he gleaned from the cellular telephone records collected in this case," including the location of cell towers to which Petitioner connected for six phone exchanges with co-defendant Carter just before the shooting. Id. These records reflected that Petitioner's cell phone connected to towers progressively closer to the crime scene from 2:04 to 2:15 a.m. (3.79 miles away at 2:04; 3.29 miles away from 2:05 to 2:10; 1.5 miles away at 2:15). Id.

On post-conviction appeal, Petitioner argued that trial counsel should have presented "an expert to rebut the State's cell phone tower evidence and prove that the cell phone tower pings showed he was at home and not at the club." McLemore, 2019 WL 258710, at *7. The TCCA rejected this claim on deficiency and prejudice grounds:

> Tennessee law is clear that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The presentation of the witness at the post-conviction hearing is typically the only way for the petitioner to establish:
>
>> (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.
>
> Id. Neither the post-conviction court nor this court may speculate on "what a witness's testimony might have been if introduced by defense counsel." Id.
>
> Although the Petitioner claims that trial counsel should have called a rebutting expert to testify in his defense, he failed to present such an expert at the post-conviction hearing or prove how his or her testimony would have altered the proof at trial. Trial counsel testified that he spoke with the State at length regarding the reliability and admissibility of cell phone tower pings and related expert testimony.

11

> He testified that he cross-examined the State's expert witness and that the expert witness conceded that the cell phone could have pinged multiple cell phone towers and explained that the evidence did not definitively place the Petitioner at the club or murder scene. The post-conviction court concluded that trial counsel properly cross-examined the State's expert witness regarding the cell phone tower evidence and that the Petitioner failed to prove deficient performance or prejudice therefrom. Accordingly, we agree with the post-conviction court that the Petitioner failed to establish that trial counsel's performance was ineffective. He is not entitled to relief.

McLemore, 2019 WL 258710, at *7.

The TCCA's determinations were reasonable. As to trial counsel's performance, he testified at the evidentiary hearing that he had several conversations with the State before trial about the reliability and admissibility of Agent Littlehale's expected testimony (Doc. No. 11-15 at 39–40), and he did not think a defense expert on this subject would have been helpful because it would not have changed the information in the records. (Id. at 38, 47). Instead, trial counsel sought to undermine the relevance of the records at trial by establishing, through cross-examination of Detective Injaychock, that cell towers around the time and place of the shooting may have been full because people were using their phones as bars closed. (Doc. No. 10-9 at 81–82). Trial counsel also elicited testimony from both Littlehale and Injaychock that cell phone tower records cannot show a person's location, just the cell tower to which the person connected. (Doc. No. 10-8 at 135; Doc. No. 10-9 at 79, 84). Given trial counsel's pre-trial investigation of the cell tower records and his strategy to blunt their impact at trial, it was reasonable for the TCCA to conclude that Petitioner failed to demonstrate deficiency regarding counsel's decision not to retain an expert. See Kendrick v. Parris, 989 F.3d 459, 472 (6th Cir. 2021) ("Strickland does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense.") (quoting Harrington, 562 U.S. at 111).

12

Case 3:19-cv-00379   Document 18   Filed 07/18/22   Page 12 of 17 PageID #: 2139

Additionally, because Petitioner did not present an expert for the post-conviction court to consider at the evidentiary hearing, it was reasonable for the TCCA to conclude that he failed to demonstrate prejudice. See Hutchison v. Bell, 303 F.3d 720, 748–49 (6th Cir. 2002) ("[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material.") (citations omitted); Tinsley v. Million, 399 F.3d 796, 810 (6th Cir. 2005) ("In the absence of any evidence showing that [petitioner's proffered mitigating witnesses] would have offered specific favorable testimony, [petitioner] cannot show prejudice from counsel's strategy recommendation not to introduce this evidence."). For all of these reasons, Claim 1.C is without merit.

  **B. Procedurally Defaulted Claims**

    **1. Claim 1.D—Trial Counsel's Handling of Exculpatory Video Footage**

There was a surveillance camera in the parking lot where the shooting occurred, and Petitioner asserts that a "proper investigation" would have uncovered footage from this camera establishing that he was not on the scene. (Doc. No. 2 at 6). The Court liberally construes this as a claim that trial counsel was ineffective for failing to investigate and obtain exculpatory video footage from this camera. Petitioner did not raise this claim in his post-conviction proceedings or present it to the TCCA on post-conviction appeal,[1] and no state court remedy remains. See Tenn. Code Ann. § 40-30-102(c) (establishing Tennessee's "one-petition" limitation on post-conviction relief); Hodges v. Colson, 727 F.3d 517, 530 (6th Cir. 2013) (explaining the three narrow

---

[1] Petitioner did assert that trial counsel was ineffective for failing to obtain and present different video footage—namely, footage from inside and outside the establishment where the victim, co-defendant Carter, and co-defendant Jenkins were present prior to the shooting. (See Doc. No. 11-14 at 111–12 (rejecting claim of ineffectiveness for failure "to introduce the video footage of the nightclub and its parking lot")). Because that claim relies on a different factual predicate than the claim raised here, Claim 1.D was not exhausted in the state courts.

circumstances in which a state prisoner may file a motion to reopen post-conviction proceedings, none of which apply to this claim) (citing Fletcher v. Tennessee, 951 S.W.2d 378, 380–81 (Tenn. 1997)). Accordingly, this claim is procedurally defaulted. See Atkins, 792 F.3d at 657.

A habeas petitioner may, in some circumstances, establish the "cause" necessary to obtain review of an otherwise defaulted claim of trial counsel ineffectiveness by pointing to post-conviction counsel's alleged ineffectiveness. Martinez v. Ryan, 566 U.S. 1, 17 (2012). The Court assumes, for the sake of argument, that Petitioner seeks to avail himself of this possibility. To do so, however, the underlying claim of trial counsel ineffectiveness must be "substantial." Abdur'Rahman v. Carpenter, 805 F.3d 710, 713 (6th Cir. 2015) (quoting Martinez, 566 U.S. at 17). "A substantial claim is one that has some merit and is debatable among jurists of reason." Id. (citing Martinez, 566 U.S. at 14). "In the converse, a claim is insubstantial when 'it does not have any merit'" or "'is wholly without factual support.'" Porter v. Genovese, 676 F. App'x 428, 432 (6th Cir. 2017) (quoting Martinez, 566 U.S. at 15–16).

Claim 1.D is insubstantial. At the evidentiary hearing, trial counsel testified that he went to the parking lot across the scene from the establishment looking for video cameras that may have captured the shooting, and he saw a camera attached to a law office. (Doc. No. 11-15 at 40–41). Counsel's investigation, however, ascertained that this camera "was not operational that night and that there was no other video." (Id.). Petitioner makes the isolated allegation that an unidentified "codefendant hired a private investigator [who] proved" that the camera attached to the law office was, in fact, functional. (Doc. No. 2 at 7). But Petitioner provides no factual allegations supporting this claim, and he points to no evidence in the record corroborating it. Petitioner's assertion that counsel's investigation amounted to ineffective assistance is therefore conclusory, and "conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim."

14

Wogenstahl v. Mitchell, 668 F.3d 307, 338 (6th Cir. 2012) (citing Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998)). Accordingly, Claim 1.D will be denied.

### 2. Claim 2—Withholding Evidence

Petitioner asserts that the State withheld two pieces of exculpatory or impeaching evidence: a promise of leniency made to co-defendant Pamela Jenkins in exchange for her testimony, and information necessary to investigate and obtain exculpatory video footage from the surveillance camera in the parking lot where the shooting occurred. Brady v. Maryland "requires the prosecution to disclose all material exculpatory evidence to the defendant before trial." Henness v. Bagley, 644 F.3d 308, 324 (6th Cir. 2011) (discussing Brady, 373 U.S. 83, 87 (1963)). "To succeed on a Brady claim, a petitioner must establish: (1) the existence of favorable evidence, either exculpatory or impeaching; (2) that the evidence was suppressed; and (3) that the suppression resulted in prejudice." Hill v. Mitchell, 842 F.3d 910, 926 (6th Cir. 2016) (citing Strickland v. Greene, 527 U.S. 263, 281–82 (1999)).

Petitioner did not exhaust a Brady claim in state court, and no state court remedy remains. See Tenn. Code Ann. § 40-30-102(c); Hodges, 727 F.3d at 530. However, because the "cause and prejudice standard" of a procedural default analysis "tracks the last two elements of a Brady claim," it may be appropriate to consider "the merits of [the] claim with the understanding that [a] decision on the merits resolves any issues as to procedural default." Bell v. Bell, 512 F.3d 223, 231 n.3 (6th Cir. 2008) (en banc) (citing Banks v. Dretke, 540 U.S. 668, 691 (2004)). The Court takes that approach here, but as explained below, Petitioner is not entitled to relief for two reasons.

First, Petitioner has not established that the State actually made a promise of leniency to co-defendant Jenkins or that the video footage referenced above ever existed. The burden is on a habeas petitioner "to prove that the evidence was not disclosed to him." Coe v. Bell, 161 F.3d 320,

15

344 (6th Cir. 1998) (citations omitted). Jenkins testified at trial that she did not have any agreements with the State (Doc. No. 10-8 at 3), and trial counsel testified at the evidentiary hearing that he had no reason to believe otherwise. (Doc. No. 11-15 at 41). Both trial counsel and Detective Injaychock, moreover, testified at the evidentiary hearing that no video footage from the surveillance camera in the parking lot where the shooting occurred existed. (Id. at 40–41, 55). Petitioner's unsupported speculation to the contrary is not enough to support a Brady claim. See Hendricks v. Lindamood, No. 3:18-CV-00094-JRG-HBG, 2019 WL 5558571, at *7 (E.D. Tenn. Oct. 28, 2019) ("[Petitioner] has failed to include any challenged evidence as part of his petition, and therefore, he has failed to sustain his burden of proving that evidence was not properly disclosed to him.") (citing Coe, 161 F.3d at 344).

Second, at least as to the alleged promise of leniency to Jenkins, Petitioner also fails to demonstrate prejudice. "To show cognizable prejudice, [the petitioner] must establish that the suppressed evidence is material—that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Hill, 842 F.3d at 926 (quoting Kyles v. Whitley, 514 U.S. 419, 433 (1995)). Here, Jenkins' motivation for testifying was clear to the jury because, although Jenkins testified that she did not have an agreement with the State, she also testified that she was facing the same charges as Petitioner and that she hoped to receive some kind of leniency as a result of testifying. (Doc. No. 10-8 at 3, 41–42). The jury also had an ample basis to question Jenkins' credibility because she testified regarding her prior inconsistent statements to police, convictions for two misdemeanor crimes of dishonesty, and alcohol and Xanax use on the night of the incident. (Id. at 27–28, 31–33, 35–36, 53, 65, 85–86). Disclosure of a formal promise of leniency, therefore, would have been cumulative impeachment evidence, and such evidence is not material. See Williams v. Bagley, 380 F.3d 932,

16

977 (6th Cir. 2004) ("[W]here undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.") (quoting Byrd v. Collins, 209 F.3d 486, 518 (6th Cir. 2000)). For all of these reasons, Claim 2 will be denied.

## VI. Conclusion

Petitioner is not entitled to relief under Section 2254, and this action will be dismissed. Because this is a "final order adverse to" Petitioner, the Court must grant or deny a certificate of appealability (COA). Habeas Rule 11(a). A COA requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "If the petition [is] denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Dufresne v. Palmer, 876 F.3d 248, 253 (6th Cir. 2017) (quoting Slack, 529 U.S. at 484).

For the reasons stated throughout the Court's analysis, the Court concludes that Petitioner has not satisfied these standards and will deny a COA.

An appropriate Order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE